**UNITED STATES of America,
Appellee,**

v.

**Victor GRIJALVA–CARRERA,
Appellant.**

No. 72–2349.

United States Court of Appeals,
Ninth Circuit.

June 14, 1974.

Thomas C. Kleinschmidt, Federal Public Defender (argúed), Tom Karas, Federal Public Defender, Phoenix, Ariz., for appellant.

Alice A. Wright, Asst. U. S. Atty. (argued), Patricia Whitehead, Asst. U. S. Atty. (appeared), William C. Smitherman, U. S. Atty., Phoenix, Ariz., for appellee.

Before CHAMBERS, MERRILL, KOELSCH, BROWNING, DUNIWAY, ELY, HUFSTEDLER, WRIGHT, TRASK, CHOY, GOODWIN, WALLACE, and SNEED, Circuit Judges.

OPINION

PER CURIAM:

The only issue in this appeal is whether evidence discovered by a border-patrol agent during the course of a routine immigration search on U. S. Highway 95 north of Yuma, Arizona, must be suppressed.

In United States v. Peltier, 500 F.2d 985 (9th Cir., 1974) (en banc), we hold that the rule announced by the Supreme Court in Almeida-Sanchez v. United States, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973), applied retroactively to all cases involving roving-patrol searches which were pending on appeal at the time that *Almeida-Sanchez* was announced. However, in United States v. Bowen, 500 F.2d 960 (9th Cir., 1974) (en banc), we also held that, although searches by border-patrol agents at fixed checkpoints violated the Fourth Amendment, *Almeida-Sanchez* would not be applied retroactively to fixed-checkpoint searches conducted prior to the date of decision of *Almeida-Sanchez.*

The search of Grijalva-Carrera's car was conducted before the decision of *Almeida-Sanchez* was announced. The controlling question is whether or not the search here was more like a roving-patrol issue than a fixed-checkpoint search. We hold that it was, and reverse.

At the hearing on the motion to suppress, the arresting officer testified that he had instructions to stop all vehicles traveling north after dark on Highway 95. His car was parked alongside the road where he could turn on its lights and observe the occupants of a vehicle which passed. There was no roadblock of any kind, and the record does not indicate that there were any signs, warning light, or other indications of a border-patrol facility. Flagging a motorist to the side of the road at an unmarked, unlighted location on a desolate highway is more characteristic of a roving-patrol search than of a fixed-checkpoint search. *See generally* United States v. Bowen, 500 F.2d at 963–964.

Reversed.

WALLACE, Circuit Judge (concurring):

I concur. As this case involves a roving patrol search, United States v. Peltier, 500 F.2d 985 (9th Cir. 1974) (en banc) governs and reversal is appropriate. This search does not qualify as occurring at a temporary checkpoint. As stated in United States v. Baca, 368 F. Supp. 398, 406–407 (S.D.Cal.1973):

Other traffic checkpoints, known as "temporary checkpoints" are maintained on roads where traffic is less frequent. The placement of these sites will be governed by the same safety factors as involved in permanent site placement and are usually located where the terrain allows an element of surprise. Operations at these temporary checkpoints are set up at irregular intervals and intermittently so as to confuse the potential violater. *Handbook* at 9–3.

When the checkpoints, whether permanent or temporary, are in operation, an officer standing at the "point" in full dress uniform on the highway will view the decelerating oncoming vehicles and their passengers, and will visually determine whether he has reason to believe the occupants of the vehicle are aliens (i. e., "breaks the pattern" of usual traffic).

. . . . . .

In actual operation the checkpoints, be they "permanent" or "temporary," have the same basic accouterments. Typically, about one-half mile to one mile south of the checkpoint is the first notification that the checkpoint is ahead. The notice is in the form of a black on yellow sign indicated "STOP AHEAD" which has floodlights for nighttime illumination, *Handbook* at 9–9. Next, about 200 yards from the checkpoint is another sign cautioning the traffic to slow down or to be careful; this sign usually has flashing yellow lights attached. For the 50 yards directly south of the checkpoint there are placed traffic cones evenly spaced along each side of the highway. The actual checkpoint has a sign indicating to the traffic to stop, with official Border Patrol vehicles parked on each side of stop zone showing the official Border Patrol emblem and/or the designation U. S. OF-

FICERS. At this point the agents assigned to the "point," in their official uniform, conduct checking and inspection operations. Beyond the checkpoint is usually a sign indicating "THANK YOU."

I agree with Justice Powell that the *Almeida-Sanchez* roving patrol search case does not "involve the constitutional propriety of searches at permanent or *temporary checkpoints*." Almeida-Sanchez v. United States, 413 U.S. 266, 276, 93 S.Ct. 2535, 2541, 37 L.Ed.2d 596 (1973) (emphasis added). A search at a temporary checkpoint is significantly different from one evolving from a roving patrol and is similar to a search at a permanent checkpoint.

Had this been a search at a temporary checkpoint, my vote would be different as I believe the retroactivity issue would be governed by United States v. Bowen, 500 F.2d 960 (9th Cir. 1974) (en banc).