**UNITED STATES of America, Appellee,**

v.

**Felix Humberto BRIGNONI–PONCE, Appellant.**

**No. 73–2161.**

United States Court of Appeals, Ninth Circuit.

June 14, 1974.

Certiorari Granted Oct. 15, 1974. See 95 S.Ct. 40.

John F. Cleary (argued), Frank J. Ragen, II, Federal Defenders, Inc., San Diego, Cal., for appellant.

Stephen Peterson, Asst. U. S. Atty. (argued), Harry D. Steward, U. S. Atty., Donald F. Shanahan, Asst. U. S. Atty., Thomas M. Coffin, Asst. U. S. Atty., (argued en banc), San Diego, Cal., for appellee.

Before CHAMBERS, MERRILL, KOELSCH, BROWNING, DUNIWAY, ELY, HUFSTEDLER, WRIGHT, TRASK, CHOY, GOODWIN, WALLACE, and SNEED, Circuit Judges.

OPINION

ALFRED T. GOODWIN, Circuit Judge:

Felix Humberto Brignoni-Ponce appeals his conviction for transporting aliens in violation of 8 U.S.C. § 1324(a)(2). Two illegal aliens were discovered following a warrantless stop of his car near the San Clemente immigration checkpoint. The government contends that even if recent decisions by the Supreme Court and this court have stripped the Border Patrol of its author-

ity to stop vehicles and search them for aliens, the Border Patrol still retains the authority, exercised in this case, to stop and interrogate any person believed to be an alien as to his right to remain in the United States. We reject that contention and reverse the conviction.

On March 11, 1973, the San Clemente immigration checkpoint, located in San Onofre, California, approximately 65 miles north of the Mexican border on Interstate 5 between San Diego and Los Angeles, was closed because of inclement weather. During the early morning hours, an agent of the Border Patrol was observing northbound traffic from his patrol car, parked at a ninety-degree angle to the interstate highway. Observing a passing vehicle whose occupants appeared to be of Mexican descent, the agent pursued the car and stopped it. Investigation soon revealed that the two passengers were illegally in the United States. They and the driver, Brignoni-Ponce, were then arrested.

In United States v. Peltier, 500 F.2d 985 (9th Cir. 1974) (en banc), this court held that the rule announced by the Supreme Court in Almeida-Sanchez v. United States, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973), applied retroactively to all cases involving roving-patrol searches which were pending on appeal at the time that *Almeida-Sanchez* was announced. However, in United States v. Bowen, 500 F.2d 960 (9th Cir. 1974) (en banc), we also held that, although searches by border-patrol agents at fixed checkpoints violated the Fourth Amendment, *Almeida-Sanchez* would not be applied retroactively to fixed-checkpoint searches conducted prior to the date of decision of *Almeida-Sanchez*.

■ The stop of Brignoni-Ponce's car was made before the decision in *Almeida-Sanchez* was announced. The first question, then, is whether or not the stop was more like one by a roving patrol than one at a fixed checkpoint. Although we held in United States v. Morgan, 501 F.2d 1351 (9th Cir., 1974) (en

banc), that searches at the San Clemente checkpoint were fixed-checkpoint searches rather than roving-patrol searches, Brignoni-Ponce's car was not stopped at the checkpoint. Rather, because the checkpoint was closed and no marked barricades designed to impede vehicular traffic were in place, Brignoni-Ponce would have proceeded undisturbed except for the decision to pursue him. His car was overtaken and stopped north of the closed checkpoint. Although the line between a roving-patrol stop and a fixed-checkpoint stop is not a clear one, we hold that pursuing a passing car and flagging it to the side of the road is conduct more characteristic of a roving-patrol stop than of a fixed-checkpoint stop. *See* United States v. Grijalva-Carrera, 500 F.2d 592 (9th Cir., 1974) (en banc); United States v. Bowen, 500 F.2d at 963–964.

The government contends, however, that even if this court holds that the stop was a roving-patrol stop, that holding would not dispose of this case. It argues that *Almeida-Sanchez, Peltier, Bowen, Morgan* and *Grijalva-Carrera* all involved the constitutionality of searches without probable cause, pursuant to 8 U.S.C. § 1357(a)(3). This case, by contrast, involves merely a stop, pursuant to 8 U.S.C. § 1357(a)(1), for the purpose of interrogating a person believed to be an alien regarding his right to remain in the United States. In support of its argument, the government cites the recent decision by the Court of Appeals for the Tenth Circuit in United States v. Bowman, 487 F.2d 1229 (10th Cir. 1973), holding that *Almeida-Sanchez* applied only to searches under § 1357(a)(3) and not to stops for interrogation under § 1357(a)(1).

■ We cannot adopt the approach taken by our brothers on the Tenth Circuit. Section 1357(a)(1), unlike § 1357(a)(3), has no requirement that the stop be within a "reasonable distance" from the border. Under the Tenth Circuit's view, immigration officials could stop a vehicle anywhere in the country in order to interrogate its occupants as

to their right to be in the United States, without a warrant, without probable cause, and without even a reasonable suspicion that any of the occupants are illegal aliens.

Such stops are entirely inconsistent with the Supreme Court's opinion in *Almeida-Sanchez*. Although the facts of *Almeida-Sanchez* called into question only that portion of § 1357(a) involving the Border Patrol's authority to stop and search vehicles, the Court's opinion reflects at least as much concern with the initial stop as with the subsequent search. *See, e. g.*, 413 U.S. at 268:

"\* \* \* It is undenied that the Border Patrol had no search warrant, and that there was no probable cause of any kind for the *stop* or the subsequent search \* \* \*." (Emphasis added.)

And 413 U.S. at 272:

"\* \* \* [N]either this Court's automobile search decisions nor its administrative inspection decisions provide any support for the constitutionality of the *stop* and search in the present case \* \* \*." (Emphasis added.)

The Court ended its opinion, 413 U.S. at 274–275, by quoting from Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), as follows:

"\* \* \* It would be intolerable and unreasonable if a prohibition agent were authorized to stop every automobile on the chance of finding liquor and thus subject all persons lawfully using the highways to the inconvenience and indignity of such a search. Travellers may be so stopped in crossing an international boundary because of national self-protection reasonably requiring one entering the country to identify himself as entitled to come in, and his belongings as effects which may be lawfully brought in. But those lawfully within the country, entitled to use the public highways, have a right to free passage without interruption or search unless there is known to a competent

official, authorized to search, probable cause for believing that their vehicles are carrying contraband or illegal merchandise \* \* \*." 267 U.S. at 153–154.

Had the Court intended to leave intact the government's asserted right to stop cars on mere suspicion anywhere in the country in order to interrogate their occupants as to their right to remain in the United States, we doubt that it would have quoted this language from *Carroll*. Even more than immigration searches which had to be conducted within an area no more than 100 miles from the border, these immigration stops offend the "right to free passage without interruption" of "those lawfully within the country."

Moreover, the Tenth Circuit's position is inconsistent with settled law of this circuit. In United States v. Mallides, 473 F.2d 859, 861 (9th Cir. 1973), we held that the stop of a vehicle by police officers, even for the limited purpose of questioning its occupants, must be based upon a "founded suspicion." *See also* United States v. Ward, 488 F.2d 162, 168–169 (9th Cir. 1973) (en banc). This holding was subsequently applied to investigatory stops by border-patrol agents. *See, e. g.*, United States v. Mora-Chavez, 496 F.2d 1181 (9th Cir. 1974); United States v. Bugarin-Casas, 484 F.2d 853, 854 (9th Cir. 1973), cert. denied, 414 U.S. 1136, 94 S.Ct. 881, 38 L.Ed.2d 762 (1974).

Likewise, the Court of Appeals for the District of Columbia Circuit has held that immigration officials, in accordance with § 1357(a)(1), may make forcible detentions of a temporary nature for the purposes of interrogation under circumstances creating a reasonable suspicion, not arising to the level of probable cause to arrest, that the individual so detained is illegally in this country. Au Yi Lau et al. v. United States Immigration & Naturalization Service, 144 U.S.App.D.C. 147, 445 F.2d 217, 223 (D.C.Cir.) (later vacated as to one party only), cert. denied, 404 U.S. 864, 92 S.Ct. 64, 30 L.Ed. 2d 108 (1971).

Here, the border-patrol agents who stopped Brignoni-Ponce's car did not possess facts which constituted a founded suspicion that he or his passengers were illegal aliens. All that they knew was that Brignoni-Ponce and his companions appeared to be of Mexican descent and were in a sedan traveling north on Interstate 5, approximately 65 miles north of the Mexican border. This is not enough. As we said in United States v. Mallides:

"* * * [T]here is nothing suspicious about six persons riding in a sedan. The conduct does not become suspicious simply because the skins of the occupants are nonwhite * * *." 473 F.2d at 861.

We hold, then, that the stop and interrogation of Brignoni-Ponce and the passengers in his car were illegal, and the fruits of the illegal conduct were inadmissible. *See* United States v. Guana-Sanchez, 484 F.2d 590 (7th Cir. 1973), petition for cert. filed November 23, 1973 (U.S. No. 73–820).

Reversed and remanded.