**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**Laurie Ann OGILVIE,**
**Defendant-Appellee.**

**No. 74–3487.**

United States Court of Appeals,
Ninth Circuit.

Sept. 15, 1975.

James Mueller, Asst. U. S. Atty. (argued), Tucson, Ariz., for plaintiff-appellant.

Mark B. Raven (argued), Tucson, Ariz., for defendant-appellee.

OPINION

Before MOORE,* DUNIWAY and WRIGHT, Circuit Judges.

* The Honorable Leonard P. Moore, Senior United States Circuit Judge for the Second Circuit, sitting by designation.

DUNIWAY, Circuit Judge.

Ogilvie was indicted for possession of marijuana with intent to distribute it in violation of 21 U.S.C. § 841(a)(1). The district court granted her motion to suppress the marijuana, and the government appeals. We affirm.

## I. *Facts.*

On Sunday, July 28, 1974, United States Border Patrol agents were operating a traffic checkpoint on Interstate Highway 19 near Nogales, Arizona.[1] The checkpoint was set up under the Peck Canyon Road overpass, approximately 14 miles north of the Mexican border. Four marked government vehicles were parked on the median strip separating northbound and southbound lanes of I–19; cone shaped red markers were placed to cause northbound traffic to merge to a single lane; two stop signs with flashing red lights were placed beside the single lane. All cars going north were being stopped.

At about 9:00 a.m., Ogilvie was driving north on I–19. She was alone in a 1968 Ford Mustang with Arizona license plates. Before reaching the checkpoint she signalled a right turn and left I–19 on the Peck Canyon Road off-ramp. She proceeded to the top of the ramp, stopped, turned left, crossed over I–19 and the checkpoint on the overpass, turned left again, drove down the on-ramp, and headed south on I–19.

Border Patrol officers who had observed Ogilvie reverse direction in this way pursued and stopped her. The officers asked her to open the trunk. She replied that she did not have a key for the trunk, although the officers saw that her key ring had both a trunk key and

an ignition key. When asked why she had turned around, Ogilvie answered that she had forgotten her necklace and wanted to return to Nogales. Through an opening along the edge of the trunk lid, an officer smelled the odor of marijuana. Then the officers opened the trunk with the trunk key and discovered approximately 239 pounds of marijuana.

## II. *Validity of the Stop.*

In granting Ogilvie's motion to suppress, the district judge reasoned that the checkpoint operations were illegal under our decisions in *United States v. Bowen*, 9 Cir. in banc, 1974, 500 F.2d 960, and *United States v. Brignoni-Ponce*, 9 Cir. in banc, 1974, 499 F.2d 1109,[2] and that this illegality infected the officers' observations of Ogilvie's exit from the highway just before reaching the checkpoint. We need not consider these issues, however. We need consider only whether the officers had a sufficient "founded suspicion" to make the stop.

Because Ogilvie was not stopped at the checkpoint in the ordinary course of its operations, we treat this stop as falling within the "roving patrol" variety. *See United States v. Brignoni-Ponce*, 9 Cir., in banc, 1974, 499 F.2d 1109, 1110, aff'd, 1974, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607. The minimum requirement to justify such a stop is that the Border Patrol officers possess a reasonable suspicion, founded on specific articulable facts, that the car may contain aliens who are illegally within the country. *Id.*, 422 U.S. at 882–884, 95 S.Ct. 2580–2582.

The government argues that Ogilvie's simple avoidance of the checkpoint, with-

1. These checkpoint operations, occurring after our decisions in *United States v. Bowen*, 9 Cir. in banc, 1974, 500 F.2d 960, aff'd, 1975, 422 U.S. 916, 95 S.Ct. 2569, 45 L.Ed.2d 641 (*see also United States v. Ortiz*, 1975, 422 U.S. 891, 95 S.Ct. 2585, 45 L.Ed.2d 623 and *United States v. Brignoni-Ponce*, 9 Cir. in banc, 1974, 499 F.2d 1109, aff'd, 1975, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607, were conducted under the purported authority of a "warrant of

inspection" substantially similar to the one that we held invalid in *United States v. Martinez-Fuerte*, 9 Cir., 1975, 514 F.2d 308, petition for certiorari filed June 11, 1975, Sup.Ct. No. 74–1560 (see 43 U.S.L.W. 3661). Government counsel, however, told the trial judge "we are not going to rely on that search warrant."

2. For subsequent history of these and related cases, see note 1, *supra.*

out more, gave the officers the requisite "founded suspicion." We cannot agree. Ogilvie's actions in turning off the highway and turning around were not in themselves suspicious. There is no evidence that Ogilvie drove fast, as if running away, disobeyed any traffic laws, or otherwise drove in an unusual or erratic manner. Ogilvie did what she had a legal right to do, reverse the direction of her travel, and did it in the only legal way that she could on that stretch of highway, an action that is not uncommon on a freeway. Innocent travelers often do the same for any number of reasons, including the unimaginative ones offered by Ogilvie, having nothing to do with illegal activity. *United States v. Garcia*, 9 Cir., 1975, 516 F.2d 318 is not to the contrary. There, Garcia, after being stopped, took off at high speed, which gave the officers probable cause. There was no such conduct by Ogilvie.

▪ We hold that the proximity of the turn to the checkpoint, regardless of the legality of the checkpoint, was not a sufficient foundation on which to rest a reasonable suspicion.

Affirmed.

MOORE, Circuit Judge (dissenting):

In my opinion, there was no constitutional defect in the stop of Ogilvie's car, and, therefore, I would reverse the order of suppression.

Ogilvie left the freeway within view of the checkpoint but before coming to it. This conduct was perhaps not as blatantly suspicious as that of the defendant in *United States v. Garcia*, 516 F.2d 318 (9th Cir. 1975), who, having been stopped at the checkpoint, sped away at high speed. But in my view, the timing of Ogilvie's exit from the highway—occurring as it did right before the checkpoint—was suspicious enough to justify a stop for questioning. Every driver has at one time or another missed his or her proper exit or suddenly remembered an item that was inadvertently left behind and for one of those reasons found it necessary to reverse the direction of travel on a highway. However, what under some circumstances may be routine behavior ceases to appear to be such when a coincidence of events makes it look as though the person is intentionally trying to avoid a possible confrontation with the police. Ogilvie's conduct in this case had this earmark. Although, contrary to subsequent developments, the stop for questioning might have revealed an entirely innocent explanation for Ogilvie's action, upon seeing her exit right before the checkpoint, the police had reason to believe that she was attempting to conceal criminal activity and therefore had reason to investigate.[1] Courts, fortunately not charged with the responsibility of apprehending narcotics violators, should not be unmindful that experienced border patrol agents often have acquired a fair amount of accumulated knowledge as to suspicious acts—hence their judgment as to what constitutes such acts should be given weight.[2]

Had the police stopped and searched Ogilvie's car at the checkpoint, such action admittedly would have been illegal under this court's decision in *United States v. Martinez-Fuerte*, 514 F.2d 308 (9th Cir. 1975), *petition for cert. filed*, 43 U.S.L.W. 3661 (U.S. June 17, 1975) (No. 74–1560). However, this is not what occurred here, and in my judgment the existence of the checkpoint, which apparently caused Ogilvie to turn off the freeway, did not taint the subsequent stop

---

1. As the Supreme Court recently noted in *United States v. Brignoni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975):

    The driver's behavior may be relevant, as erratic driving or obvious attempts to evade officers can support a reasonable suspicion.

2. The Court in *Brignoni-Ponce, supra*, stressed the importance of an officer's experience in assessing the existence of reasonable suspicion for a stop:

    In all situations the officer is entitled to assess the facts in light of his experience detecting illegal entry and smuggling.

    95 S.Ct. 2574, *citing, Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

under *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The police have the right to slow and divert traffic so that they may observe vehicles as they pass. *United States v. Evans,* 507 F.2d 879, 880 (9th Cir. 1974); *United States v. Garcia, supra.* And the Supreme Court's decision in *United States v. Ortiz,* 422 U.S. 891, 95 S.Ct. 2585, 45 L.Ed.2d 623 (1975) (invalidating the warrantless search of an automobile at a traffic checkpoint), expressly recognized that "[n]ot every aspect of a routine automobile 'inspection' . . . constitutes a 'search' for purposes of the Fourth Amendment." *Id.,* 95 S.Ct. at 2589, n. 3. For all that Ogilvie knew, whatever the police would do at the checkpoint would be entirely legal. I also would not assume otherwise.

For the foregoing reasons, I dissent.