**UNITED STATES of America, Plaintiffs,**

v.

**Randall Lee GREENE and Marta Cecelia Villarreal, Defendants.**

**No. CR 93–209 TUC JMR.**

United States District Court,
D. Arizona.

July 7, 1993.

Claire K. Lefkowitz, Asst. U.S. Atty., Tucson, AZ, for plaintiff.

Ruben Teran, Douglas, AZ, for Greene.

Gloria Torres, Asst. Fed. Public Defender, Tucson, AZ, for Villarreal.

## ORDER

ROLL, District Judge.

The Court has under advisement defendants' motion to · suppress evidence based upon an unlawful stop of a motor vehicle.

### FACTS

The government has the burden of proving the lawfulness of searches and seizures, and this extends to brief investigatory stops. *See United States v. Alvarez,* 899 F.2d 833, 836 (9th Cir.1990) (burden of justifying investigatory stop falls on government),

*cert. denied,* 498 U.S. 1024, 111 S.Ct. 671, 112 L.Ed.2d 663 (1991). The facts submitted at the hearing on the motion to suppress physical evidence are as follows.

On April 1, 1993, two uniformed Border Patrol agents were traveling east on U.S. Highway 80 near Bisbee, Arizona, in an unmarked car. They drove past the scene of a traffic accident involving a school bus. Numerous marked law enforcement vehicles were at that site and emergency lights on several of these vehicles were operating. No Border Patrol vehicles were at the scene. A police officer was in the roadway directing traffic, which was moving slowly through the accident scene without stopping. Highway 80 at this point is a two lane highway connecting Douglas, Arizona, which is a city directly on the U.S.–Mexico border, with Bisbee, which is a smaller city a few miles north of the border.[1] The agents testified that numerous side roads in this area are frequently used by drug traffickers.

The Border Patrol agents observed a car approaching the accident scene from the opposite direction. Before that vehicle reached the accident scene, it made a lawful u-turn and began to travel eastbound toward Douglas. The agents observed that the windows of the car were heavily tinted so that they could not see inside it. The agents immediately suspected that the driver of the vehicle made the maneuver in order to avoid slowly passing by the cluster of law enforcement vehicles. As the agents followed the vehicle, which was a mid–1970s red Chevrolet Camaro, they concluded that the rear right side of the vehicle was weighed down. This conclusion was premised upon the fact that the right rear tire appeared to balloon out. The agents followed the vehicle for one minute after the u-turn, then stopped the vehicle to investigate.

Inside the vehicle were defendants Greene and Villarreal, and approximately 232 pounds of marijuana.

---

1. To the east, Highway 80 curves north through Tombstone, Benson, and connects with Interstate Highway 10. To the west of Douglas, Highway 80 curves north and again connects with I–10 in New Mexico.

## APPLICABLE LAW

To be lawful, an investigatory stop must be supported by a founded suspicion consisting of "specific, articulable facts which, together with objective and reasonable inferences, form a basis for suspecting that the particular person is engaged in criminal activity." *United States v. Hernandez–Alvarado,* 891 F.2d 1414, 1416 (9th Cir.1989). The government relies primarily on two observations regarding the defendant's vehicle in support of founded suspicion for the stop: the u-turn to avoid the cluster of law enforcement vehicles and the car's appearance of being weighed down.[2]

### *The U-turn*

The defendants rely upon *United States v. Ogilvie,* 527 F.2d 330 (9th Cir.1975). There, the Ninth Circuit upheld the district judge's suppression of evidence obtained after a vehicle which had been approaching a clearly marked immigration checkpoint placed across northbound Interstate Highway 19 near Nogales, Arizona, turned around and proceeded back toward Nogales.[3] A majority of the panel concluded that the mere fact that the driver of the vehicle turned around after having approached the checkpoint did not furnish a founded suspicion for the stopping of the vehicle.

The government relies upon *United States v. Ramirez–Lujan,* 976 F.2d 930 (5th Cir. 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1587, 123 L.Ed.2d 153 (1993), in which the Fifth Circuit upheld denial of a motion to suppress evidence. There, an agent stopped a vehicle after the driver turned on to an infrequently travelled unpaved road rather than proceed through a checkpoint. Familiar with the area, the agent knew that there were only a few residences within the next 15–20 miles and that the vehicle to not belong to any of those residents. Notably, however, the Fifth Circuit did not conclude

---

2. Although the government also suggests that the tinted windows were suspicious, this feature of the vehicle is hardly remarkable in the sunny climate of southern Arizona.

3. I–19 connects Nogales to Tucson.

that a founded suspicion existed but only that the officers had a good faith basis to believe that a founded suspicion existed. The "good faith" exception to the exclusionary rule has yet to be extended by the Supreme Court or the Ninth Circuit to warrantless searches.

In the instant case, *Ogilvie* is better authority. In *Ogilvie*, it was at least arguable that the driver of that vehicle knew that she would be subject to inspection at the immigration checkpoint. In the instant case, it was not clear that the occupants of the red Camaro would be subject to any inspection. Unlike the unimproved sideroad onto which the suspect turned in *Ramirez–Lujan*, here, the occupants of the red Camaro were travelling toward Bisbee on a U.S. Highway and, after the u-turn, were eastbound toward Douglas on the same highway.

### *Appearance of Vehicle*

█ The other major factor relied upon by the government in support of the stop is testimony from the agents that the car appeared to be weighted down. The vehicle was an older one, however. In addition, the quantity of drugs was not such as to be substantially more than the weight of a large individual.[4] In *United States v. Rodriguez*, 976 F.2d 592 (9th Cir.1992), the Ninth Circuit instructed district judges to be vigilant in evaluating conclusions drawn concerning older model vehicles which arguably appear to be carrying an unusually large load but which ultimately are found to contain quantities of drugs less than that which would cause the vehicle to appear as observed.[5]

### CONCLUSION

Although it is true that seemingly innocent or lawful actions or circumstances may support a founded suspicion when those actions or circumstances are observed and interpreted by an experienced officer, *see Rodriguez*, 976 F.2d at 596, the agents in this case did not possess a founded suspicion to stop the red Camaro.

**IT IS ORDERED.**

---

4. Defendants elicited testimony that the agents themselves each weighed approximately 200 pounds; although the agents questioned whether anyone of their size would actually sit in the Camaro's small back seat.

5. One agent specifically testified the ballooning of the right rear tire could have been caused either by a heavy load or by underinflation.