UNITED STATES of America,
Plaintiff–Appellee,

v.

Rafael GARCIA–BARRON, and Grabel
Solis Gonzalez, Defendants–
Appellants.

Nos. 96–50498, 96–50508.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 9, 1997.

Decided June 26, 1997.

Knut S. Johnson, Law Office of Knut S. Johnson, San Diego, CA, for defendant–appellant Garcia–Barron.

Vincent J. Brunkow, Federal Defenders of San Diego, Inc., San Diego, CA, for defendant–appellant Solis Gonzalez.

Lawrence E. Spong, Assistant United States Attorney, San Diego, CA, for plaintiff–appellee.

Before: O'SCANNLAIN and TASHIMA, Circuit Judges, and WHALEY, District Judge.*

* The Honorable Robert H. Whaley, United States District Judge for the Eastern District of Washington, sitting by designation.

WHALEY, District Judge:

Appellants Grabel Solis Gonzalez ("Solis Gonzalez") and Rafael Garcia–Barron ("Garcia–Barron") both pleaded guilty to conspiracy to bring in, bringing in, and transporting illegal aliens, in violation of 18 U.S.C. §§ 2 and 371 (1994) and 8 U.S.C. § 1324 (1994). Having entered conditional pleas that preserved their rights to appeal, Appellants now challenge the District Court's denial of their Motions to Suppress on the grounds that the stop of both Appellants and the arrest of one was justified by reasonable suspicion and probable cause, respectively. We have jurisdiction under 28 U.S.C. § 1291 (1994), and we affirm.

## BACKGROUND

The Border Patrol operates a checkpoint north of Nyland, California, on Highway 111, approximately fifty miles from the Mexican border. A northbound vehicle can avoid the checkpoint by exiting Highway 111 at Frink Road and taking several side roads that ultimately rejoin Highway 111 north of the checkpoint. Frink Road may also be used to access several trailer parks/spas occupied by retirees, who generally do not travel on Frink Road in the early morning hours.

At 3:00 a.m. on March 7, 1996, Border Patrol Agent Olvera ("Olvera") was stationed at the checkpoint, when he observed a vehicle driven by Solis Gonzalez exiting the highway at Frink Road. In the days preceding March 7, there had been an unusually high number of arrests for alien smuggling on Frink Road and the other side streets used to circumvent the checkpoint. Suspecting the vehicle that exited the highway was attempting to bypass the checkpoint, Olvera followed the vehicle. While doing so, he checked the vehicle license and determined that the car had been rented from a Budget Rent–A–Car office in the Los Angeles area. In Olvera's experience, most of the rental cars he had stopped during the previous two years were transporting persons subsequently charged with immigration violations. Olvera stopped the vehicle after it passed the two trailer courts/spas that are the most common destinations from the Frink Road exit but before the vehicle reached the inter-section of Frink Road with Hot Mineral Spa Road. At that intersection, the vehicle could either have turned right and driven to a dead end, where another trailer park/spa was located, or turned left, ultimately rejoining Highway 111 north of the checkpoint.

During the stop, Solis Gonzalez presented Olvera with a United States passport and stated that he had been born in Tucson, Arizona. While speaking with Solis Gonzalez, Olvera also saw a cellular phone and pager in the vehicle. Solis Gonzalez stated that he was looking for a restroom and was traveling to Coachella to give money to a truck driver. Nevertheless, Solis Gonzalez did not know either the driver's name or the meeting place.

During the stop, a van passed. Olvera directed his flashlight at the van and noticed people "ducking down." Olvera stopped questioning Solis Gonzalez and, together with Border Patrol Agent Cordero ("Cordero"), who had just arrived, followed the van, leaving Solis Gonzalez free to proceed. Olvera caught up with, and stopped, the van several miles north of the checkpoint. A records check revealed that it had been rented from a Budget Rent–A–Car office twenty miles from the branch at which Solis Gonzalez had rented his car. When the agent approached the vehicle, no one was in the driver's seat, but there were approximately twenty-eight people sitting or kneeling in the back of the van. Garcia–Barron, who was later identified as the driver, was lying on top of the others in a spread-eagled manner.

As the agents were removing the occupants of the van, Solis Gonzalez drove past. By this point, the agents had done a further records search on Solis Gonzalez and learned that he was a Mexican citizen, who had been deported to Mexico previously, directly contradicting his claim to United States citizenship. By the fact that Solis Gonzalez drove past Garcia–Barron's stopped vehicle, which was then north of the checkpoint, the agents knew that Solis Gonzalez had circumvented the checkpoint. The agents stopped and arrested Solis Gonzalez.

## ANALYSIS

### I. Reasonable Suspicion

**A. Reasonable Suspicion to Stop Solis Gonzalez's Vehicle**

On appeal, Solis Gonzalez argues that the District Court's denial of his Motion to Suppress should be reversed because Olvera did not have reasonable suspicion to stop his vehicle.

■ In the context of Border Patrol searches, the factors to be considered in determining whether "reasonable suspicion" exists to justify stopping a vehicle include, but are not limited to: 1) characteristics of the area; 2) proximity to the border; 3) usual patterns of traffic and time of day; 4) previous alien or drug smuggling in the area; 5) behavior of the driver, including "obvious attempts to evade officers"; 6) appearance or behavior of passengers; 7) model and appearance of the vehicle; and, 8) officer experience. *United States v. Brignoni–Ponce,* 422 U.S. 873, 885, 95 S.Ct. 2574, 2582, 45 L.Ed.2d 607 (1975).

■ In the instant case, the District Court properly characterized the inquiry regarding reasonable suspicion as "close" because it largely involved facts that are as consistent with innocent activity as criminal activity. There was nothing inherently suspicious about the type of car Solis Gonzalez drove, the manner in which he drove, or Solis Gonzalez himself. Ultimately, however, the existence of two factors gave rise to reasonable suspicion that Solis Gonzalez was involved in criminal activity. First, the District Court found that Solis Gonzalez was attempting to avoid the checkpoint, based on Olvera's testimony and the surrounding circumstances. Apparent efforts to avoid checkpoints combined with other factors have generally been found to constitute "reasonable suspicion." *United States v. Rodriguez–Sanchez,* 23 F.3d 1488, 1493 (9th Cir.1994); *United States v. John Doe,* 701 F.2d 819 (9th Cir.1983); *United States v. Roberts,* 470 F.2d 858, 859 (9th Cir.1972).

The District Court's factual finding was not clearly erroneous in light of the time of day, the route taken, the failure to turn off at either of the most common destinations for the limited traffic that legitimately traveled the road, and the fact that the area was known for alien smuggling. Solis Gonzalez correctly points out that a stronger case would exist if Olvera had waited to see if the car accessed the third trailer park, located further down the road beyond where the stop occurred. The District Court, however, accepted Olvera's conclusion that the car was avoiding the checkpoint, giving rise to reasonable suspicion for a stop.[1]

The second factor supporting the District Court's finding of reasonable suspicion is Appellant's use of a rental car. When coupled with the factors cited *supra,* Olvera's experience in stopping rental cars and Appellant's use of such a vehicle makes the determination of reasonable suspicion constitutionally sound. *See, e.g., United States v. Franco–Munoz,* 952 F.2d 1055, 1057–58 (9th Cir.1991) (rental agency sticker was one of seven factors that "paint[ed] a picture that would create in the mind of a trained border patrol agent a reasonable suspicion that the driver was engaged in criminal activity"); *cf. United States v. Bates,* 533 F.2d 466, 469 (9th Cir.1976) (in area where use of rental cars was common to smuggling operations, rental car helped to create probable cause to search vehicle); *United States v. Korb,* 464 F.2d 456, 457 (9th Cir.1972) (finding probable cause based, *inter alia,* on officer's knowledge that "a rented car is a common *modus operandi* among marijuana, narcotics, and alien smugglers").

Viewing the evidence in the light most favorable to the Government—including the

---

1. This Court's opinion in *United States v. Ogilvie,* 527 F.2d 330 (9th Cir.1975), does not require a contrary result. In *Ogilvie,* we held that mere proximity of a checkpoint to the place where a person makes a "u-turn" or turns around using a highway ramp does not give rise to reasonable suspicion. *Id.* at 332. In *Ogilvie,* Border Patrol agents stopped a vehicle that exited immediately before a checkpoint, proceeded over the highway on a ramp, and reversed direction to proceed away from the checkpoint. There was no other evidence offered to support the stop; nothing about the driver, the type of car, the time of day, or anything else was used by the officers to justify the stop. *Ogilvie* is not controlling where, as here, numerous other factors were contemplated by the officer in determining that reasonable suspicion existed for the stop.

apparently deliberate attempt to avoid the checkpoint in a rental car at 3:00 a.m. in an area known to be used by smugglers—Olvera's suspicion was reasonable. Accordingly, we affirm the District Court's denial of Solis Gonzalez's Motion to Suppress.

### B. Reasonable Suspicion to Stop Garcia–Barron's Vehicle

 On appeal, Garcia–Barron argues that the District Court's denial of his Motion to Suppress was error because reasonable suspicion did not justify the stop of his vehicle. The denial of the motion, however, was not error because the events leading to the stop of his vehicle were sufficient to give rise to reasonable suspicion that the vehicle was being used for alien smuggling. Garcia–Barron was stopped while traveling on a road that can be—and was in the days leading up to the stop—used to circumvent the checkpoint. While the officer did not know the route used by the van, the surrounding circumstances, including the hour and the usage patterns of the road, lead to a reasonable conclusion that the van was avoiding the checkpoint. When a flashlight was used to illuminate the van, people ducked out of sight, apparently hiding. The van passed the agents while they were questioning Solis Gonzalez, whose reason for traveling on the road lacked credibility, whose car had been rented from the same rental agency as the van driven by Garcia–Barron, and who was in possession of a cellular phone and beeper, all of which suggested that he may have been "scouting" for the van.

The facts supporting the stop of the Solis Gonzalez vehicle, combined with the "ducking down" of the persons in the vehicle, the use of a rented van that can be used to carry many people, and the apparent circumvention of the checkpoint, raised reasonable suspicion that the vehicles were acting in tandem and were involved in alien smuggling. Accordingly, we affirm the District Court's denial of Garcia–Barron's Motion to Suppress.

### II. Probable Cause to Arrest Solis Gonzalez

 Solis Gonzalez further contends that the District Court erred in denying his Mo-

tion to Suppress because probable cause did not exist at the time of his arrest. *See Beck v. Ohio,* 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *United States v. Arzate–Nunez,* 18 F.3d 730 (9th Cir.1994). We reject Appellant's argument. Probable cause was supported, in part, by the facts that gave rise to reasonable suspicion to stop the car in the first instance. Additionally, probable cause was supported by the fact that Solis Gonzalez was arrested on Highway 111 after having avoided the checkpoint. Evidence supported the conclusion that the two vehicles were acting in concert: Solis Gonzalez possessed a pager and a cellular phone, he had been seen twice on different roads in the vicinity of a vehicle containing twenty-eight aliens at a time when those roads were not normally traveled, and both Appellants' vehicles had been rented from the closely located branches of the same nonlocal rental agency. Further, the Border Patrol agents had learned that Solis Gonzalez had been deported to Mexico previously, which contradicted his claim to United States citizenship and his presentation of a United States passport.

Based on the facts known to the officer at the time of the initial stop, plus the additional facts listed *supra,* the officer's reasonable suspicion ripened into probable cause to suspect that Solis Gonzalez was involved in the smuggling of the aliens in the van. *See United States v. Avalos–Ochoa,* 557 F.2d 1299, 1303 (9th Cir.1977) (citations omitted). Accordingly, we affirm the District Court's denial of Solis Gonzalez's Motion to Suppress.

### CONCLUSION

The District Court did not err in denying Appellants' Motions to Suppress on the grounds that reasonable suspicion justified the stop of Solis Gonzalez and Garcia–Barron, and probable cause existed to justify the arrest of Solis Gonzalez.

**AFFIRMED.**