**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 08-50305 |
| Plaintiff - Appellee, | D.C. No. CR-07-01445-BTM-1 |
| v. | |
| CARLO ROBERT ZACCAGNINI, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Southern District of California
Barry T. Moskowitz, District Judge, Presiding

Argued June 4, 2009; Resubmitted December 4, 2009
Pasadena, California

Before: RYMER and GRABER, Circuit Judges, and ALDRICH,[**] District Judge.

Defendant Carlo Robert Zaccagnini appeals his conviction for possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841. He argues that Border Patrol agents (1) lacked reasonable suspicion to initiate an investigatory

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Ann Aldrich, Senior United States District Judge for the Northern District of Ohio, sitting by designation.

stop of his vehicle and (2) lacked probable cause to deploy a tire deflation device to stop his vehicle. We affirm.

1. We review de novo the legal question whether reasonable suspicion existed to justify an investigatory stop and review for clear error the district court's findings of fact. United States v. Tiong, 224 F.3d 1136, 1139 (9th Cir. 2000).

Extended border searches,[1] "which occur after the actual entry has been effected and intrude more on an individual's normal expectation of privacy[,] . . . must be justified by reasonable suspicion that the subject of the search was involved in criminal activity." United States v. Guzman-Padilla, 573 F.3d 865, 877-78 (9th Cir. 2009) (alteration in original) (internal quotation marks omitted). Law enforcement officers must also "possess a reasonable certainty that a border has been crossed." Id. at 878 (internal quotation marks omitted).

Here, the officers were reasonably certain that Defendant's vehicle had entered the United States from Mexico. The district court found that, because the watching agents had not seen the vehicle enter the frontage road from the only two

---

[1] Because the stop here took place fifteen miles from the border, the extended border search doctrine applies. See Rodriquez-Gonzalez v. United States, 378 F.2d 256, 258 (9th Cir. 1967) (finding that search conducted fifteen hours after a border crossing at a distance of twenty miles from the border was an extended border search).

possible entry points on the American side of the border, the "highly likely, if not only reasonable conclusion that they could draw would be that the vehicle came from Mexico, which is very near this location and does not have a fence separating the border." The testimony of the officers supports that finding.

The officers also had reasonable suspicion to stop Defendant's vehicle near the international border.[2] The Imperial Sand Dunes is a remote area near the Mexican border at which there is no border fence and through which illegal entries into the United States occur on almost a daily basis. Because of the frequency of illegal entries there, the area is patrolled regularly by border police. Agent Mills testified that when officers apprehend a vehicle that has entered illegally, they often find that the driver is smuggling aliens or narcotics. He further testified that smugglers typically drive four-wheel drive vehicles across the border and that Defendant's Suburban is a four-wheel drive vehicle. Agent Vega-Torres testified

---

[2] The Supreme Court has set out a non-exhaustive list of factors that an officer may take into account when deciding whether reasonable suspicion exists to stop a car near an international border: (1) the "'characteristics of the area'" in which he or she encounters the vehicle; "'(2) proximity to the border; (3) usual patterns of traffic and time of day; (4) previous alien or drug smuggling in the area; (5) behavior of the drive[r,] including obvious attempts to evade officers; (6) appearance or behavior of the passengers; (7) model and appearance of the vehicle; and (8) officer experience.'" Tiong, 224 F.3d at 1139 (quoting United States v. Garcia-Barron, 116 F.3d 1305, 1307 (9th Cir. 1997) (citing United States v. Brignoni-Ponce, 422 U.S. 873, 884-85 (1975))).

that, based on his experience, there was probable cause to believe both that Defendant had entered the United States illegally and that he was engaged in smuggling activity.[3]

Because the officers were reasonably certain that Defendant had crossed an international border and because they reasonably suspected that Defendant was involved in criminal activity, they were justified in conducting an investigative stop.

2.  We review de novo "[t]he determination of whether a seizure exceeds the bounds of a[n] [investigative] stop and becomes a de facto arrest." United States v. Miles, 247 F.3d 1009, 1012 (9th Cir. 2001) (internal quotation marks omitted). "Under the Fourth Amendment, a warrantless arrest requires probable cause." United States v. Lopez, 482 F.3d 1067, 1072 (9th Cir. 2007).

"[I]ntrusive measures may convert a stop into an arrest if the measures would cause a reasonable person to feel that he or she will not be free to leave after brief questioning—i.e., that indefinite custodial detention is inevitable." Guzman-

---

[3]  The district court could consider the officers' experience when assessing reasonable suspicion because their conclusions were objectively reasonable, see United States v. Montero-Camargo, 208 F.3d 1122, 1131 (9th Cir. 2000) (en banc), based on the remote location of the Dunes, its proximity to the international border, the frequency of smuggling in that area, the vehicle's suspicious entrance onto the frontage road from an unknown location, and the four-wheel drive capability of the Suburban.

Padilla, 573 F.3d at 884.  Use of a tire deflation device to stop a vehicle, near an international border, whose driver is reasonably suspected of criminal activity, does not convert a stop into an arrest.  See id. at 885 ("While anyone in [Defendants'] situation would have felt constrained to remain at the scene immediately after his or her tires had been deflated and as agents approached the vehicle, it does not follow that the mere use of a [tire deflation device] to stop the vehicle would have caused an innocent person to believe that a prolonged custodial detention amounting to an arrest was about to occur.").  Because, under Guzman-Padilla, the officers did not effect an arrest of Defendant, they did not need probable cause to deploy the tire deflation device.  Reasonable suspicion of criminal activity and reasonable certainty of a border crossing, which they established, were enough.

AFFIRMED.

5