FILED

JUL 14 2011

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 09-10483 |
| Plaintiff - Appellee, | D.C. No. 4:08-cr-01195-CKJ-BPV-1 |
| v. | |
| ARGENTINO SALVADORE PURITA, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the District of Arizona
Cindy K. Jorgenson, District Judge, Presiding

Submitted July 12, 2011[**]
San Francisco, California

Before: SILVERMAN and GRABER, Circuit Judges, and WRIGHT,[***] District
Judge.

Defendant Argentino Salvadore Purita stands convicted of conspiring to

transport illegal aliens for profit, 8 U.S.C. § 1324(a)(1)(A)(v)(I), and of

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]    The panel unanimously concludes this case is suitable for decision
without oral argument.  Fed. R. App. P. 34(a)(2).

[***]    The Honorable Otis D. Wright II, United States District Judge the
Central District of California, sitting by designation.

transporting illegal aliens for profit, 8 U.S.C. §§ 1324(a)(1)(A)(ii), (a)(1)(B)(i). Reviewing de novo whether there was reasonable suspicion to justify a stop and reviewing for clear error the district court's underlying factual findings, United States v. Palos-Marquez, 591 F.3d 1272, 1274 (9th Cir.), cert. denied, 131 S. Ct. 339 (2010), we affirm.

An investigatory stop does not violate the Fourth Amendment "if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" United States v. Sokolow, 490 U.S. 1, 7 (1989) (quoting Terry v. Ohio, 392 U.S. 1, 30 (1968)). Specifically, factors that may be considered to determine whether an officer reasonably suspected that a defendant was transporting illegal aliens include, but are not limited to: "(1) characteristics of the area in which a vehicle is encountered; (2) proximity to the border; (3) usual traffic patterns on the particular road; (3) previous experience with alien traffic; (4) recent illegal border crossings in the area; (5) erratic or evasive driving behavior; (6) aspects of the vehicle; and (7) the behavior or appearance of the driver." United States v. Diaz-Juarez, 299 F.3d 1138, 1141 (9th Cir. 2002) (citing United States v. Brignoni-Ponce, 422 U.S. 873, 884–85 (1975)).

In this case, border patrol agents first encountered Defendant's minivan about four miles from the international border. They knew that the road in

question was a major smuggling artery that was used to evade checkpoints. The minivan was traveling at night, a time when traffic on that road was ordinarily light. See Diaz-Juarez, 299 F.3d at 1142 (holding that a defendant's traveling in a high-crime area at a time when vehicle traffic is unusual may support reasonable suspicion (citing United States v. Tiong, 224 F.3d 1136, 1140 (9th Cir. 2000))). Moreover, the minivan was riding low in the rear, a mere 6 to 8 inches from the ground. See, e.g., Brignoni-Ponce, 422 U.S. at 885 (holding that a vehicle's appearance of being "heavily loaded" may support a reasonable suspicion of illegal smuggling). The agents saw no cargo, and the number of passengers was insufficient to explain the additional weight. The agents saw only the driver, the front-seat passenger, and one rear-seat passenger, who was riding in the middle seat. Both agents considered the rear-seat passenger's position to be suspicious because, in their experience, smugglers sometimes put a person in the middle seat in an attempt to explain the laden appearance of the vehicle. In addition, the minivan traveled at just 4 to 5 miles per hour for approximately two minutes while the agents were following it. See United States v. Rocha-Lopez, 527 F.2d 476, 477–78 (9th Cir. 1975) (holding that reasonable suspicion was supported in part by the fact that the defendant, upon seeing law enforcement, slowed to 10 miles per hour).

The district court declined to rely on several other factors that aroused the officers' suspicion. But on de novo review we consider those factors relevant. For instance, both officers testified that they saw condensation on the rear windshield of the minivan which, in their experience, suggested that there were people in the back of the car who were breathing heavily. Additionally, after discovering that the car was registered to Alliance Corporation, the agents thought the minivan was probably a rental car. Both agents testified that, in their experience, local smuggling organizations use rental vehicles to avoid seizure of their personal vehicles. See United States v. Garcia-Barron, 116 F.3d 1305, 1307 (9th Cir. 1997) (holding that the defendant's use of a rental car supported the reasonable suspicion that he was smuggling illegal aliens). Finally, the agents noticed that the vehicle did not "bounce" much, which, in their experience, meant that the vehicle was heavily loaded.

Although Defendant offers potential, innocent explanations for each of the facts considered by the agents, the totality of the circumstances supported a reasonable suspicion that the minivan was being used to transport illegal aliens. See Diaz-Juarez, 299 F.3d at 1141 ("Individual factors that may appear innocent in isolation may constitute suspicious behavior when aggregated together." (citing

4

Sokolow, 490 U.S. at 9-10)).  We therefore affirm the district court's denial of Defendant's motion to suppress.

**AFFIRMED.**